IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JANICE RUBBO,

   *Plaintiff*,

v.

PEOPLESCOUT, INC., *et al.*,

   *Defendants*.

CIVIL ACTION
NO. 16-4903

**PAPPERT, J.**                     May 11, 2017

<u>**MEMORANDUM**</u>

  Janice Rubbo sued PeopleScout, Inc. and Seaton, LLC under the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA"). (Compl., ECF No. 1.) The parties have resolved these claims. They jointly move for approval of their Settlement Agreement ("the Agreement") pursuant to the Court's duty to ensure that FLSA wage-payment settlements represent a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). For the reasons explained below, the Court grants the motion in part and denies it in part.

### I.

  PeopleScout hired Rubbo in 2012 to work as a recruiter. The recruiter position was classified as nonexempt under the FLSA and Rubbo was paid hourly. (Compl. ¶ 8–9.) In April of 2014, PeopleScout promoted Rubbo to operations manager, a position it classified as exempt from the FLSA's overtime provisions. (*Id.* ¶ 10.) In her new position, Rubbo earned an annual salary of $71,200. (*Id.*) Rubbo alleges that at various points in time after her promotion, she was asked to perform the duties of a recruiter in

1

addition to her new role as operations manager. (*Id.* ¶ 12.) Rubbo now contends she was owed overtime compensation under the FLSA, which PeopleScout refused to pay. (*Id.* ¶ 15.)

**II.**

"[T]he FLSA was designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive a fair day's pay for a fair day's work." *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quotation omitted). An employee's right to a minimum wage and overtime pay under the FLSA "cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Id.* at 740 (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)). Accordingly, FLSA claims may be compromised or settled in just two ways: "(1) a compromise supervised by the Department of Labor pursuant to 29 U.S.C. § 216(c); or (2) a compromise approved by the district court pursuant to 29 U.S.C. § 216(b)." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 522 (E.D. Pa. 2016). Although the Third Circuit Court of Appeals has not addressed whether parties can settle FLSA actions claiming unpaid wages without court approval, district courts within the Circuit have followed the approach endorsed by a majority of courts and assumed that judicial approval is necessary. *See Howard v. Phila. Housing Auth.*, 197 F. Supp. 3d 773 (E.D. Pa. 2016); *Kraus*, 155 F. Supp. 3d at 516; *see also Bettger v. Crossmark, Inc.*, No. 13-cv-2030, 2015 WL 279754, at *3 (M.D. Pa. Jan. 22, 2015) (collecting cases).

Courts therefore play an important role in ensuring that plaintiffs in FLSA lawsuits do not effectively waive their statutory rights. To that end, "[w]hen employees

2

bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food*, 679 F.2d at 1353.

Courts presented with a proposed settlement of an FLSA claim first determine whether it resolves a bona fide dispute, *i.e.*, a dispute that involves "factual issues rather than legal issues such as the statute's coverage and applicability." *Kraus*, 155 F. Supp. 3d at 530 (quoting *Creed v. Benco Dental Supply Co.*, No. 12-01571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013)). If the dispute is bona fide, the Court engages in a two-part inquiry: First, the Court must determine if the settlement is fair and reasonable to the employee or employees involved. *See McGee v. Ann's Choice, Inc.*, No. 12–cv–2664, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014). If it is, the Court then considers "whether the agreement furthers or impermissibly frustrates the implementation of FLSA in the workplace." *Id.*

### III.

#### A.

"A proposed settlement resolves a bona fide dispute where the settlement's terms reflect a reasonable compromise over issues, such as back wages, that are actually in dispute and are not a mere waiver of statutory rights brought about by an employer's overreaching." *Howard*, 197 F. Supp. 3d at 777 (internal quotation and citation omitted). "In other words, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Id.* (quotation and citation omitted).

3

The Agreement resolves a bona fide dispute. In its answer, PeopleScout denied Rubbo's allegations of wrongdoing. At the settlement approval hearing, PeopleScout explained its position that Rubbo's work was exempt from the FLSA, (Tr. of Hr'g, at 7:6–8), a position it maintains in the Agreement. *Cf. Howard*, 197 F. Supp. 3d at 778.

**B.**

Whether a proposed settlement is fair and reasonable depends on nine factors: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); s*ee also, e.g., In re Chickie's & Pete's Wage & Hour Litig.*, No. 12–cv–6820, 2014 WL 911718, at *3 (E.D. Pa. Mar. 7, 2014).[1]

The Agreement is fair and reasonable. Counsel investigated the claims and exchanged documents and written discovery—this "demonstrates that counsel had an appreciation of the merits and risks of proceeding to trial before negotiating the Settlement Agreement." *Howard*, 197 F. Supp. 3d at 778. Rubbo's counsel also explained three hurdles he would face at trial: show Rubbo was doing nonexempt

---

[1] However, "at least some of the *Girsh* factors appear to be little help, if not irrelevant, in the single-plaintiff context." *Howard v. Phila. Housing. Auth.*, 197 F. Supp. 3d 773, 777 n.1 (E.D. Pa. 2016). "Thus, even though *Girsh* may suggest the type of factors to be considered in assessing a private FLSA settlement, courts need not fall into the alluring trap of mechanically applying *Girsh* simply because it is the court's duty to assess whether the proposed agreement is fair." *Id.* (quoting *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 523 n. 3. (E.D. Pa. 2016)).

4

employee work, establish that the fluctuating rate[2] did not apply and prove the number of hours Rubbo worked without overtime compensation. (Tr. of Hr'g, at 8:17–9:1.)

The compensation terms are also fair and reasonable: PeopleScout has agreed to pay Rubbo $29,000. While Rubbo alleged substantial uncompensated overtime, Rubbo's counsel acknowledged at the hearing that the records produced in discovery did not fully support her allegations. Specifically, while Rubbo likely worked more than forty hours a week, she could not show that she worked the ninety hours per week as alleged in her Complaint. (Tr. of Hr'g, at 6:7–11; 7:22–24.) Both parties explained that PeopleScout had a potential defense—it could argue under the fluctuating work week method that she was not undercompensated for her time. (*Id.* at 8:17–23.)

The Agreement includes $6,000 in fees for Rubbo's counsel, Robert J. Haurin. Haurin has been practicing labor and employment law for twenty-five years, with experience in FLSA cases. (*Id.* at 12:23–24.) Haurin had little out-of-pocket costs, but spent a considerable amount of time on the case: he estimated he had accrued fees of $10,000 at an hourly rate of $325 and offered to submit his time records to the Court.[3] (*Id.* at 12:9–17.) PeopleScout's counsel estimated her fees to be approximately double this amount. (*Id.* at 19:2–3.) Moreover, Haurin's $6,000 in fees represents just 17% of the total settlement amount, a very reasonable percentage. *See Howard*, 197 F. Supp. 3d at 780 (approving attorney's fees that represented 32.4% of the total settlement); *see*

---

[2] At the settlement approval hearing, counsel explained that the fluctuating rate is calculated by dividing the employee's salary by the number of hours worked. (Tr. of Hr'g, at 5:4–11.)

[3] The Philadelphia Community Legal Services attorney fee schedule lists an hourly rate range of $620–$650 for an attorney with over twenty-five years of experience. "The fee schedule established by Community Legal Services, Inc. ("CLS") has been approvingly cited by the Third Circuit as being well developed and has been found by the Eastern District of Pennsylvania to be a fair reflection of the prevailing market rates in Philadelphia." *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (quotation omitted). The CLS fee schedule is available at http://clsphila.org/about-cls/attorney-fees.

*id.* at 781 (explaining that "fee awards for common fund cases generally range from 20–45% of the fund").

## C.

### i.

The Agreement, however, impermissibly frustrates the implementation of the FLSA because it includes an overly broad release provision. Paragraph five of the Agreement provides for a "general release of claims and a promise not to sue." (Agreement ¶ 5, ECF No. 25-2.) Specifically, by signing the Agreement, Rubbo waives:

> [A]ny and all possible claims, demands, causes of action, lawsuits, damages, compensation, liability, or relief of any kind . . . arising from the beginning of time until the date that the Parties sign [the] Agreement, including but not limited to: (a) all Claims arising out of or from Ms. Rubbo's employment and/or the terms or conditions of her employment with Defendants under any and all possible legal, equitable, tort, contract or statutory theories, including but not limited to any claims for constructive or wrongful discharge or breach of contract, or any tort, except for any claims relating to accrued and vested rights under a retirement plan, and (b) all claims under the Fair Labor Standards Act, the state wage and hours statute, Age Discrimination in Employment Act, the Americans with Disabilities Act, the Rehabilitation Act, Title VII of the Civil Rights Act of 1964, the Older Workers' Benefit Protection Act, 42 U.S.C. § 1981, Consolidated Omnibus Budget Reconciliation Act (COBRA), the anti-discrimination laws of the State of Pennsylvania, and all other federal, state or local laws prohibiting employment discrimination, retaliation, protecting whistleblowing, and any other Claim alleging discrimination based on disability, religion, sex, gender identify, race, age, retaliation, mental status, genetic information or any other legally protected category.

(*Id.*)

"These broad terms, for which the parties seek judicial approval, exceed the legal basis of Plaintiff's Complaint (*i.e.*, wage and hour statutory protection) as well as the factual basis of her Complaint." *Howard*, 197 F. Supp. 3d at 779. Moreover, the Court has no way to evaluate the value of the claims being released. *Id.* at 780. The Court

cannot approve such a wavier—its role in approving an FLSA settlement is limited and "rests on the public's unique interest in FLSA rights." *Id.* at 779. Accordingly, the Court must "appreciate the limitations" of this role. *Id.*

In *Howard v. Philadelphia Housing Authority*, 197 F. Supp 3d 773 (E.D. Pa. 2016), the court rejected a similar release provision that would have precluded the plaintiff from bringing "any and all claims . . . concerning the termination of Plaintiff's employment." *Id.* The court worried that by "blindly approving" such a waiver, it "risk[ed] judicially endorsing a waiver of Plaintiff's other statutorily protected rights that may be implicated by an allegedly unlawful termination," such as those arising under the Civil Rights Act and the Americans with Disabilities Act. *Id.*

Here, the release provision explicitly references the specific statutes (and many others) under which Rubbo's rights are protected and asks Rubbo to waive such rights. In doing so, it goes far beyond the release provision rejected in *Howard*. At the hearing, PeopleScout's counsel acknowledged the overly broad scope of the release. She explained that "payment of $35,000 was certainly far higher than what [PeopleScout] intended to pay for this case," (Tr. of Hr'g, 16:12–14.), but because Rubbo (who PeopleScout had terminated) was also waiving her rights to bring additional statutory claims, PeopleScout was willing to agree to a higher settlement. (*Id.* at 16:18–25.) In so doing, PeopleScout's counsel confirmed that this portion of the Agreement is a "mere waiver of statutory rights brought about by an employer's overreaching" that this Court cannot approve. *Lynn's Food*, 679 F.2d at 1355.

**ii.**

The remainder of the Agreement does not impermissibly frustrate the implementation of the FLSA. The Agreement does not contain a confidentiality provision that would prevent either party from publicly discussing its terms. While it contains a "non-disparagement" provision that requires Rubbo not to "speak or otherwise communicate about her employment with Defendants or the termination thereof in a disparaging way or in a negative light," (Agreement ¶ 9), this provision does not preclude Rubbo from discussing her claims against PeopleScout or the Agreement's terms. As such, it is not so restrictive that it frustrates the purpose of the FLSA. *See, e.g.*, *In re Chickie's & Pete's*, 2014 WL 911718, at * 3 (approving settlement agreement with provision that "only prohibits Plaintiffs from disparaging Defendants or discussing the substance and negotiations of this matter with the press and media.").

**IV.**

For these reasons, the Court will grant in part and deny in part the joint motion for judicial approval of the Agreement. The Court will not approve the overbroad release provision. In all other respects, the Court finds that the proposed Agreement reflects a fair and reasonable compromise of a bona fide dispute and does not otherwise impermissibly frustrate the implementation of the FLSA. Counsel will be permitted to file an amended settlement agreement for judicial review.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.